*In the Matter of Adult Guardianship of*
*Eleanor BEGAY*
*and concerning*
*Rosalind Begay Zah*
*vs.*
*Shirley Etsitty*

In the Family Court of the Navajo Nation
Judicial District of Window Rock, Navajo Nation (Arizona)

No. WR-FC-1 072-05

July 11, 2006

## ORDER

This Order arises on Eleanor Begay's *Motion to Dismiss Petition for Guardianship*. Having considered the motion, responsive pleadings and the record, and being otherwise fully informed, the court grants the motion for the following reasons:

### PROCEDURAL HISTORY

The *Petition for an Adult Guardianship* was filed in August 2005 and the relevant procedural history is recited here to provide the backdrop for this order of dismissal. The individual who is the subject of this action is Eleanor Begay, an 89-year old woman. On September 21, 2005 the then-presiding judge granted ex parte temporary guardianship to the petitioner, Rosalind Zah. Ms. Zah is Eleanor's daughter. A final hearing was set for December 19, 2005. In October 2005 Ms. Shirley Etsitty, another of Eleanor's daughters, was allowed to intervene as an interested party.

Before the final hearing the presiding judge entered an order of recusal, as did the other regularly-presiding judges in Window Rock. *See* Orders of Recusal, 12/9/05 and 12/15/05. The undersigned judge was assigned to preside over this matter on December 16, 2005. The final hearing was continued and this docket number was set for a pretrial conference on March 23, 2006. In addition, a guardian ad litem was appointed for Ms. Eleanor Begay, as was separate legal counsel. *See* Appointment of Guardian ad Litem for Ward and Appointment of Legal Counsel for Ward, 1/23/06.

On March 17, 2006 Ms. Begay (through counsel) filed the pending Motion to Dismiss Petition for Guardianship. The pretrial conference was continued to allow for responsive pleadings to the request for dismissal. Order, 3/20/06.

Before the responsive pleadings were filed and the motion became ripe for review, an intervening event occurred: Petitioner filed a Motion for Emergency Teleconference because Ms. Eleanor Begay had been removed from the Payson Care Center without Ms. Zah's knowledge or consent. The person who had removed Ms. Begay from the care center was Shirley Etsitty. A telephone conference was held on March 23rd, and resulted in the vacation of Ms. Zah's temporary guardianship. Instead, "the Petitioner will retain legal custody of Ms. Begay and physical custody will be with the Intervenor until further order

of this court." Minute Entry & Order, 3/23/06, p.2, ¶A. Ms. Zah's request for reconsideration of that decision was denied. Order, 4/17/06.

Briefing resumed on the motion to dismiss, with a response filed by Ms. Etsitty on April 26th and a response by Ms. Zah filed on April 27th. Ms. Begay filed a reply to the motion on April 27, 2006. Petitioner filed a reply to Ms. Etsitty's response on May 1, 2006. All pleadings in response to the initial motion to dismiss were considered in the following analysis.

## MOTION TO DISMISS: SUBSTANTIVE ANALYSIS

Ms. Begay argues that the petition for guardianship should be dismissed for a variety of reasons, each having to do with service of process and/or notice to Ms. Begay and how lack of proper notice violates her rights to due process. The Court agrees.

### Service of Process was not accomplished pursuant to Nav. R. Civ. P. 4

The Navajo Nation Code requires that "[n]o judgment shall be given on any suit unless the defendant has been served notice in accordance with the applicable Court rules of such suit and given ample opportunity to appear in Court in his/her defense .... " 7 N.N.C. §604. As there are no specific rules for guardianship actions, the "applicable Court rules" in this suit are the Navajo Rules of Civil Procedure. Rule 4 details the requirement for service of process, emphasizing that personal service is a priority before other means of service will suffice.

In this case, everyone agrees that Ms. Eleanor Begay was not served in accordance with Rule 4.

### Insufficient service of process has not been "cured" in this case

Our Supreme Court has considered whether insufficient service of process may be cured when a party, despite lack of service of process, nevertheless appears with counsel at a scheduled hearing. *Yazzie v. Yazzie*, 7 Nav. R. 203 (Nav. Sup. Ct. 1990). In *Yazzie*, the court held that although the party had not been served pursuant to the rules, he nevertheless was present and prepared to argue his case. "Any violation of the service rules was cured by the father's appearance." *Id.* at 204. The Court added that "[a]t no time did the father argue that he was prejudiced by the lack of proper service." *Id.* This court understands that in some situations, procedurally deficient service may still protect a party's due process if that party has actual notice and opportunity to be heard. However, in this case it cannot be so.

Ms. Eleanor Begay argues, and the court agrees, that she was prejudiced by the lack of service of process. The ex parte temporary guardianship was not granted until almost one month after the underlying petition was filed. Although this court is statutorily authorized to enter ex parte temporary or preliminary relief (7 N.N.C. §256) in some circumstances, the temporary guardianship need not have been ex parte had Ms. Eleanor Begay been served with the petition. It comports with both *bilagáana* legal principles as well as

*Diné bi beenahaz'áanii* that decisions made with the input from as many parties as possible are better than those made with input from only one.

Ms. Begay was removed from her home in September 2005, with all of the included deprivations of property and liberty, without notice of the underlying cause for the removal. At the time, she was not afforded the opportunity to present her Response to the Petitioner's Petition. Ms. Begay may know of the petition for guardianship at this point, but it would be an inappropriate precedent to allow remedial actions to so easily cure a due process violation. *Diné bi beenahaz'áanii* principles of *hazhǫ́'ǫ́go* have been violated

In proceeding throughout this case, we seem to have forgotten that the people involved here are *Nohookáá' Dine'é* dealing with other *Nohookáá Dine'é*. "When faced with important matters, it is inappropriate to rush to conclusion or to push a decision without explanation and consideration to those involved. *Áádóó t'áána'nile'dii éí dooda.*" *Navajo Nation v. Rodriquez*, 8 Nav. R. 604, 615 (Nav. Sup. Ct. 2004).

Unfortunately, the provisions in our Navajo Nation Code for guardianship have not been updated since 1945. 9 N.N.C. §§801-805. No procedural guidelines for guardianship actions have ever been created. For more than fifty years, whenever petitions for guardians are filed with the court (especially when the subject is an adult) procedures are inconsistent and often fail to protect the subject's due process.

It is not permissible for this case to continue. To go along in the manner that the case has proceeded so far would be condoning the continued violation of *Diné bi beenahaz'áanii* and Ms. Begay's rights. The court acknowledges the difficulties caused by dismissing this action after so much time has passed, but it cannot be otherwise. The dismissal shall be without prejudice.

This court understands that as a lower tribunal its orders affect only this action and these parties. Nevertheless, it takes this opportunity to reflect on notice provisions that might be adopted and followed in all newly-filed guardianship actions. *See Bizardi v. Navajo Nation*, 8 Nav. R. 593 (Nav. Sup. Ct. 2004) (authorizing lower courts to "adopt procedures, consistent with due process, they deem fit and apply them consistently" to commitment cases, before passage of the Health Commitment Act).

Although we have no clear guidance from our guardianship statute, we do have two remedial statutes to which we look: the Health Commitment Act of 2006 (Council Resolution No. CJA-Ol-06, January 26,2006) and the Elder Protection Act (9 N.N.C. §§l80l *et seq*.). Both of these statutes provide relief for individuals who are allegedly unable to care for themselves, and for whom the best relief may be to be removed from their own homes, or to have their freedom and liberty otherwise impaired by court order. Our guardianship statute contemplates much the same intentions and relief.

With respect to notice and service of process, the Health Commitment Act

requires that the subject of the petition be "served with" a copy of the petition and supporting evaluation(s), notice of date time and place of the hearing and an advice of rights. Health Commitment Act of 2006 (Council Resolution No. CJA-01-06, January 26, 2006), p.9, §2106(C). The court interprets "served with" to mean that the service must comply with Nav. R. Civ. P. 4. *See* §2103(C) ("The Navajo Nation Rules of Civil Procedure ... shall apply to all health civil commitment proceedings, unless they are inconsistent with this Act."). The notice to the individual must be completed at least 72 hours before the hearing is conducted. *Id.* at §2106(C).

The Elder Protection Act also requires that the elder be given notice of the proceedings. When someone files a petition for an Elder Protection Order containing allegations that the elder can not appropriately care for herself, the court may issue a protection order "*after affording notice to all affected parties* and holding a hearing which demonstrates by clear and convincing evidence that the elder is incapacitated. . . ." 9 N.N.C. §1815 (emphasis added). Although the statute does not define "notice" in the context of the Elderly Protection Act, this court believes that again Rule 4 concepts of service of process would apply.

Both of the above-discussed statutes require notice to the subject individual. Both statutes, as statements of policy, state the importance of *k'é*, respect, compassion, commitment to family and similar concepts. *See* Health Commitment Act of 2006 (Council Resolution No. CJA-01-06, January 26,2006), §2101(C); 9 N.N.C. §1802. We should interpret our fifty-year old guardianship statute to require no less and to have no less gracious a policy.

## CONCLUSION

This Petition for an Adult Guardianship is dismissed without prejudice. The reasons for the dismissal are 1) the failure to appropriately serve Ms. Begay with the petition and 2) *Diné bi beenahaz'áanii* principles of *hazhó'ógo* have been violated.

Ms. Begay is fortunate to have so much of her family concerned about her continued welfare and who wish to see her safe and cared for. The court hopes that the family, together with the participation of Ms. Begay, can come together and agree on the best course of action. Certainly, if an agreement cannot be reached the court will consider any newly-filed petition, whether it be pursuant to the guardianship provisions, Health Commitment Act, Elderly Abuse Act, or an action of another nature.

Any newly-filed petition will be assigned a new docket number and will be subject to the service requirements of Rule 4 or other notice provisions stated within the applicable statutory provision. Any request for "immediate" or "emergency" temporary arrangements will be subject to stringent notice and timing requirements.